UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NELSON MARRERO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 25-cv-9861 |
| v. ) | |
| ) | Judge April M. Perry |
| EMANUEL ACOSTA, YESENIA TAYLOR, ) | |
| WESTCHESTER POLICE SERGEANT ) | |
| BATTAGLIA #151, WESTCHESTER DET. ) | |
| JACKIE ROGERS, WESTCHESTER INV. ) | |
| COLIN LOCKBRIDGE and CITY OF ) | |
| WESTCHESTER, a Municipal Corporation, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Nelson Marrero ("Plaintiff") brings this case against Emanuel Acosta ("Acosta") and Yesenia Taylor ("Taylor"), along with Westchester Police Sergeant Jeffrey Battaglia, Detective Jackie Rogers, Investigator Colin Lockbridge (together the "Defendant Officers"), and the City of Westchester[1] ("Westchester" and collectively, the "Westchester Defendants"). Doc. 1 at 1. Plaintiff alleges in the complaint that Taylor and Acosta falsely accused Plaintiff of having stolen two vehicles belonging to Taylor and that the Defendant Officers joined in the conspiracy. As such, the complaint asserts claims for false arrest (Count I), malicious prosecution (Count II), conspiracy in violation of 42 U.S.C. § 1983 and Illinois state law (Count III), and requests indemnification from Westchester for the misconduct allegedly committed by the Defendant Officers (Count V).[2] *Id.* at 5–8.

---

[1] In the Westchester Defendants' Motion to Dismiss, the Westchester Defendants refer to Westchester as the "Village of Westchester" rather than the "City of Westchester." This opinion uses the name used in the complaint.

[2] Plaintiff's counts are numbered as I, II, III, and V and therefore the Court uses the same nomenclature. There is no Count IV.

Sticking to their stolen vehicle story, prior to this lawsuit Acosta and Taylor filed a case against Plaintiff in the Circuit Court of Cook County, Illinois, asserting claims against Plaintiff for conversion, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and violation of the Illinois Wage Payment and Collection Act. *See* Doc. 9-1.[3] Acosta and Taylor now move under Federal Rule of Civil Procedure 12(b)(1) for this Court to abstain from hearing this matter and to stay this case through disposition of their state action. Doc. 9. Also pending before the Court is a Rule 12(b)(6) motion to dismiss filed by the Westchester Defendants. Doc. 16. For the reasons set forth below, the motion for abstention is denied and the motion to dismiss is granted.

## BACKGROUND

Plaintiff owns and operates Powers Towing, a tow truck company located in Hillside, Illinois. Doc. 1 at 2. During the relevant period, Plaintiff employed Acosta as a tow truck driver. *Id.* at 2–3. According to the complaint, Taylor and Acosta worked together to falsely accuse Plaintiff of stealing two vehicles owned by Taylor. *Id.* at 3. In furtherance of this scheme, Acosta and Taylor had Taylor's vehicles towed from a parking lot by Powers Towing. *Id.* Acosta and Taylor then reported the vehicles as stolen to the Westchester Police, and the Defendant Officers were assigned to investigate the matter. *Id.* At that time, Acosta informed the Defendant Officers that Plaintiff had been the person who authorized removal of the vehicles. *Id.* Later that day, Acosta and Taylor were able to retrieve the vehicles from a tow yard without charge. *Id.* at 3–4.

---

[3] The Court takes judicial notice of the state court complaint. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that a district court may take judicial notice of matters of public record when considering a Rule 12(b)(6) motion).

After Acosta and Taylor recovered the vehicles, they notified Sergeant Battaglia that the vehicles had been damaged. *Id.* at 4.

Approximately two months later, the Defendant Officers informed Plaintiff that the Cook County State's Attorney's Office had approved felony charges against him. *Id.* However, this was false and the Defendant Officers ultimately arrested Plaintiff only for misdemeanor theft and criminal damage to property. *Id.* at 4–5. As alleged, Acosta and Taylor and the Defendant Officers conspired to charge Plaintiff with criminal acts "despite the fact that there was no evidence [that] Plaintiff was personally involved in towing Defendant Taylor's vehicles or had any intent to permanently deprive Defendant Taylor of her property." *Id.* at 4. In support of this allegation, the complaint alleges that during the investigation, Plaintiff provided the Defendant Officers with "confirmation that a dispatcher for Powers Towing had provided the police with notice and confirmation the vehicles were being towed." *Id.* Similarly, the complaint stated that security video from the parking lot "identified the tow trucks and operators." *Id.* at 3. Although the complaint does not elucidate who the video showed towing the vehicles, the Court infers that the video did not show Plaintiff driving the tow truck. *Id.*

On December 17, 2024, Plaintiff was found not guilty of all criminal charges. *Id.* at 5. As a result of his arrest and prosecution, Plaintiff's business purportedly suffered damage, including the loss of municipal contracts. *Id.*

## ANALYSIS

I.  **Motion for Abstention**

The Court begins with Acosta and Taylor's motion for abstention under Federal Rule of Civil Procedure 12(b)(1), which is brought pursuant to the *Colorado River* doctrine. Specifically, Acosta and Taylor argue that this case should be stayed through disposition of their state action

3

because Plaintiff's complaint is "based almost entirely" on the facts included in the state court complaint. Doc. 9 at 2.

Motions for abstention are not specifically enumerated in Rule 12(b), but courts have treated Rule 12(b)(1) as the "appropriate procedural mechanism for raising the issue of abstention." *Lowery v. Schnorf*, No. 97 C 6688, 1998 WL 341835, at *3 (N.D. Ill. 1998). Under the *Colorado River* doctrine, "a federal court can abstain from exercising jurisdiction and defer to the concurrent jurisdiction of a state court when there is a parallel state court action pending." *Starzenski v. City of Elkhart*, 87 F.3d 872, 878 (7th Cir. 1996). However, abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" that can only be justified in "exceptional circumstances." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Because federal courts have a "virtually unflagging" obligation to exercise properly conferred jurisdiction, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989), the Court's abstention analysis should be "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

Generally, abstention under the *Colorado River* doctrine rests "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River*, 424 U.S. at 817. To determine whether a stay is appropriate, courts conduct a two-part analysis in which they first determine whether the state and federal actions are parallel and if so, conduct a balancing test of various factors. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). "If the

4

actions are not parallel, the *Colorado River* doctrine does not apply and the court need not address the second part of the analysis." *Id*.

In determining whether actions are parallel, the Court must consider whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Antosh v. Vill. of Mount Pleasant*, 99 F.4th 989, 994 (7th Cir. 2024). Actions do not need to be identical to be parallel. *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005). In other words, suing under different causes of action or adding additional parties does not necessarily mean that two cases are not parallel. *See Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004).[4] Instead, the relevant question is whether there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Freed*, 756 F.3d at 1018. Given the Court's responsibility to adjudicate the matters before it, "any doubt regarding the parallel nature of the state suit should be resolved in favor of exercising jurisdiction," *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011).

In this case, Acosta and Taylor argue that abstention is proper because if the state court grants them relief, the only way this Court would be able to grant Plaintiff relief is to make factual findings inconsistent with the state court's findings. Doc. 9 at 6. Specifically, they suggest that if the state court concludes that Plaintiff had unlawfully taken the vehicles in question, then this Court would be bound to find that Plaintiff's arrest and prosecution were

---

[4] Although the parties need not be identical, some courts have found if parties are not the same the cases should not be considered parallel "because the parties in the state case wouldn't represent the interests of the parties to the federal proceeding." *See, e.g.*, *Fifth Third Bank v. Double Tree Lake Ests., LLC*, No. 2:11-CV-0233-PPS-PRC, 2012 WL 589432, at *2 (N.D. Ind. 2012) (discussing *Adkins*, 644 F.3d at 499).

5

supported by probable cause. *Id*. As probable cause is a defense to all of the claims, Acosta and Taylor argue the state court's findings would dispose of this action in its entirety.

The Court disagrees. Acosta and Taylor conflate the existence of probable cause in a criminal case with a finding of civil liability. Probable cause depends exclusively on what the arresting officers understand the facts to be at the time they make an arrest. *See White v. Hefel*, 875 F.3d 350, 357 (7th Cir. 2017). Probable cause can exist even if arresting officers rely on entirely untrue allegations, so long as the complaint they receive is reasonably credible. *See Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). By the same token, an arrest may be lacking in probable cause even if the arrestee is later found guilty. *See White*, 875 F.3d at 357 (noting that "later learned evidence does not establish that there was earlier probable cause"). Therefore, this case will turn on what the Defendant Officers were told about the towed vehicles, and whether a reasonable officer would have relied on such statements. In contrast, the state court case for conversion, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and violation of the Illinois Wage Payment and Collection Act, does not depend at all on what the Defendant Officers understood the facts of the case to be when they arrested Plaintiff. Rather, the state case will be decided based on whether Plaintiff actually unlawfully moved the vehicles at issue. *See* Doc. 9 at 4 (explaining that the state court action will depend, upon other things, on whether Powers Tower held a "Relocator's License," had a contract to tow from the parking lot at issue, and whether the owner of the parking lot requested a tow). While as a philosophical matter probable cause is more likely to exist where someone is guilty (and by extension, less likely to exist if someone has done nothing wrong), legally it is irrelevant. *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984) (concluding that "it is unimportant"

whether a crime actually occurred "provided that such conduct if true would justify [an] arrest … and provided the police had no reason to believe the complaint was untrue").

For these reasons, the parties are not litigating substantially the same issues in the state and federal actions. Whether or not the state court were to conclude that Plaintiff relocated Taylor's vehicle in violation of state civil law, this Court would still need to determine what facts were known to the Defendant Officers at the time of the arrest, and whether a reasonable officer would have relied on those facts. As a result, the state litigation would not dispose of all of the claims presented in the federal case, the proceedings are not parallel, and the *Colorado River* doctrine does not apply. Acosta and Taylor's motion for abstention is denied.

## II. Motion to Dismiss

Having declined to abstain, the next question is whether the complaint has plausibly alleged any claim for relief. A motion to dismiss a complaint under Rule 12(b)(6) is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

The Westchester Defendants argue for dismissal of all claims because: (1) Plaintiff does not sufficiently allege each individual officer's involvement in the purported constitutional violations; (2) Plaintiff has alleged probable cause, or, in the alternative, arguable probable cause for his arrest, which negates his claims for false arrest and malicious prosecution; (3) Plaintiff's conspiracy claims fail, among other reasons, because he has not alleged an underlying constitutional violation; and (4) Plaintiff's claim for indemnification is moot because he has not stated a viable claim against the Defendant Officers.

The Court begins with the Westchester Defendants' argument that Plaintiff has not made sufficient factual allegations to put each Defendant Officer on notice of Plaintiff's claims in violation of Federal Rule of Civil Procedure 8 and 42 U.S.C. § 1983's "personal involvement" requirement. Doc. 16 at 3; *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). In general, as the Westchester Defendants concede, "[g]roup pleading does not violate Rule 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 955 (N.D. Ill. 2024) (internal citations omitted). This is especially true in cases brought under 42 U.S.C. § 1983 where "a plaintiff is forced to employ limited group pleading because they cannot specify which individual committed which parts of the alleged misconduct before the benefit of discovery." *Linke v. Baits,* No. 3:23 C 50370, 2025 WL 2689922, at *8 (N.D. Ill. 2025) (internal citations omitted). Under such circumstances, allegations directed at multiple defendants can be adequate to plead personal involvement, particularly where the allegations pertain to all defendants. *See Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Specifically, courts may allow group pleading "in cases involving

complaints against only a few defendants where the alleged facts plausibly suggest a basis for holding each of the defendants personally liable." *Karney v. City of Naperville*, 2016 WL 6082354, at *7 (N.D. Ill. 2016).

In this case, the problems with the complaint do not arise from group pleading. Although Plaintiff's allegations against the Defendants Officers are not particularized, the alleged misconduct is straightforward: essentially, the complaint alleges that the Defendant Officers worked together to bring criminal charges against Plaintiff though there was no evidence of a crime. Plaintiff includes only three named individuals in his complaint, each of whom he identifies as a member of the investigative team assigned to his case. Further, all allegations of misconduct are made against the entire team. Therefore, the fact that Plaintiff engaged in group pleading does not justify dismissal.

What does justify dismissal is that Plaintiff has not alleged any facts from which one could plausibly infer that any of the Defendant Officers is liable. Specifically, the Westchester Defendants argue that the complaint fails because its allegations establish probable cause for Plaintiff's arrest and prosecution which negates each of the claims alleged. Doc. 16 at 5. For the reasons that follow, the Court agrees.

As a preliminary matter, the Court notes that for both false arrest and malicious prosecution, the complaint must plausibly allege that the defendant lacked probable cause for the arrest. *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (false arrest requires the plaintiff to show he was arrested without probable cause); *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996) (malicious prosecution under Illinois law requires a plaintiff to allege there was no probable cause for the judicial proceedings). Similarly, because Plaintiff's conspiracy claim depends entirely upon his having been the victim of a false arrest and malicious

9

prosecution, probable cause would also render that claim unsustainable. *See Pyles v. Strebing*, No. 24-1797, 2025 WL 2083900, at *2 (7th Cir. 2025) (finding that Section 1983 "does not permit an independent claim of conspiracy absent an underlying constitutional violation"); *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. App. Ct. 2000) (noting that when "a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails"). With that established, the Court moves on to whether the complaint in this case has plausibly alleged a lack of probable cause.

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed … an offense." *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998). It is based "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer[.]" *Id.* "When police officers obtain information from an eyewitness or victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not credible." *Pasiewicz v. Lake Cnty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001).

Here, the complaint alleges that the Defendant Officers were told by Acosta and Taylor that Plaintiff had arranged for the theft of Taylor's cars. Specifically, the complaint alleges that Acosta and Taylor "contacted the Westchester Police Department and falsely claimed that Defendant Taylor's vehicles were stolen" and that Acosta "falsely informed the Defendant Officers that the Plaintiff authorized the removal of Taylor's vehicles." Doc. 1 at 3. Later, after Acosta and Taylor retrieved the vehicles, the complaint alleges that "they falsely informed

10

Defendant Westchester Sgt. Battaglia that the vehicles had been damaged." *Id*. at 4. At no point does the complaint allege any facts from which the Defendant Officers should have inferred that Acosta and Taylor were incredible witnesses. This is, on its face, sufficient to support a finding of probable cause for misdemeanor theft and criminal damage to property.[5]

The Court does not find persuasive Plaintiff's arguments that, despite these allegations, the complaint alleges "obvious and overwhelming evidence" that would undercut a probable cause finding. Doc. 19 at 8. Specifically, Plaintiff points out that Taylor's vehicles were returned on the same day as the purported theft. However, "the fact that the owner of stolen property recovers it, does not extinguish the offense of theft." *Johnson v. Universal Cas. Co.*, 100918-U, 2011 WL 10069094, at *2 (Ill. App. Ct. 2011). Plaintiff also argues that there was no probable cause because the Powers Towing dispatcher had given notice of the removal to police. Presumably, Plaintiff believes that this notification should lead to the inference that no crime had occurred, because why would the police be notified if something nefarious was happening? But the dispatcher's notification does not speak to anyone's knowledge or intent other than the dispatcher's. After all, according to Plaintiff's theory of the case, the tow was in fact criminal as it was part of a conspiracy by Acosta and Taylor to frame Plaintiff for theft. Given that everyone agrees the tow was nefarious (they only disagree about who was responsible), the Court cannot draw any reasonable inference from the dispatcher's call other than that the dispatcher was not in on the scheme.

Similarly unpersuasive are Plaintiff's arguments that there was no probable cause for his arrest because there was no evidence that he personally towed the vehicles or that he had an

---

[5] Theft under Illinois law occurs when one knowingly obtains or exerts unauthorized control over property of the owner and intends to deprive the owner permanently of the use or benefit of the property. 720 ILCS § 5/16-1. Criminal damage to property involves knowingly damaging the property of another. 720 ILCS § 5/21-1(a)(1).

11

intent to permanently deprive Taylor of them. It is black-letter law that one can commit a crime through the actions of another, and that is exactly what the complaint alleges when it states that "Defendant Acosta falsely informed the Defendant Officers that the Plaintiff authorized the removal of Taylor's vehicles." Doc. 1 at 3. As for intent to permanently deprive Taylor of the vehicles, Illinois law does not require any direct proof of intent to deprive a property owner of their property in order for someone to be guilty of theft. *People v. Grodkiewicz*, 157 N.E.2d 16, 19 (Ill. 1959) (finding that intent to deprive an owner is "rarely susceptible of direct proof and such element … may be inferred from all the attendant facts and circumstances, even though positive proof is lacking"). Taking a vehicle that does not belong to you from where it is parked is enough to infer intent to permanently deprive the owner of the car. *Cf. People v. Owens*, 504 N.E.2d 186, 189 (Ill. App. Ct. 1987) (intent can be inferred from the removal of merchandise from the last known payment station).

      The only allegations in the complaint that would establish a lack of probable cause are Plaintiff's repeated references to a "conspiracy" between Taylor and Acosta and the Defendant Officers to arrest Plaintiff even though "there was no probable cause." But both are legal conclusions that the Court does not credit. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 633 (7th Cir. 2007) ("[Courts] are not obliged to accept as true legal conclusions or unsupported conclusions of fact."). Ultimately, the complaint does not allege any facts from which the Court can infer that a conspiracy existed between Taylor and Acosta and the Defendant Officers to arrest Plaintiff without probable cause. To the contrary, the complaint continually refers to false information provided by Taylor and Acosta to the Defendant Officers,

which is fatal to a reasonable inference that they were all in on the scheme together and that the Defendant Officers should have known that the case was unsupported by probable cause.

The lack of plausible allegations of a conspiracy between Taylor and Acosta and the Defendant Officers is significant for one additional reason. The only basis for federal jurisdiction in this case is 42 U.S.C. § 1983, which requires that someone acting under color of state law deprived Plaintiff of his federally-protected rights. Taylor and Acosta are not state actors, and so the only way Plaintiff can proceed with a Section 1983 case against them is if there is "evidence of a *concerted effort*" between Taylor and Acosta and at least one of the Defendant Officers. *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019). The Seventh Circuit has held that "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss." *Id*. Instead, a plaintiff needs to plausibly allege some type of "joint action, concerted effort, or even a general understanding" between the state actors and private actors for a Section 1983 case based upon conspiracy between public and private actors to proceed. *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998). The complaint as currently drafted plausibly alleges that Taylor and Acosta acted jointly to frame Plaintiff by providing a series of false statements to the Defendant Officers. The complaint also plausibly alleges that the Defendant Officers acted together to charge Plaintiff with two misdemeanor offenses. But the complaint is bereft of plausible allegations of joint action between the Defendant Officers and Taylor and Acosta. There is therefore no plausible Section 1983 claim pled against Taylor and Acosta.

For these reasons, the Court dismisses the claims for false arrest (Count I), malicious prosecution (Count II), and conspiracy in violation of 42 U.S.C. § 1983 and Illinois state law

(Count III). As there are no claims remaining against the Defendant Officers, Plaintiff's claim against Westchester for indemnification (Count V) is dismissed as moot.

## CONCLUSION

Acosta and Taylor's motion for abstention is denied. The Westchester Defendants' motion to dismiss is granted and the complaint is dismissed in its entirety for failure to allege a plausible claim. Any amended complaint is to be filed by March 25, 2026. When deciding whether the complaint can be amended consistent with this opinion and the law, counsel is encouraged to carefully consider whether he can meet his Federal Rule of Civil Procedure 11 obligations that factual contentions in the complaint have evidentiary support or are likely to have evidentiary support.

Dated: February 20, 2026

                   _____
                   APRIL M. PERRY
                   United States District Judge